# IN THE COURT OF APPEALS OF IOWA

No. 21-1702
Filed December 7, 2022

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**STORMY ALLEN AGAN,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Jasper County, Brad McCall, Judge.


        Stormy Agan appeals his convictions for neglect of a dependent person and child endangerment. **AFFIRMED.**



        Daniel M. Northfield, Urbandale, for appellant.

        Thomas J. Miller, Attorney General, and Zachary Miller, Assistant Attorney General, for appellee.



        Considered by Bower, C.J., and Greer and Badding, JJ.

**BOWER, Chief Judge.**

Stormy Allen Agan appeals his convictions for neglect of a dependent person and child endangerment causing serious injury. We find substantial evidence supports the jury's verdicts and the district court did not abuse its discretion in excluding evidence. We affirm.

**I. Background.**

C.A., born July 2020, is the child of Stormy and his wife, Jessica. In October, Jessica took C.A. to the doctor after noticing bruising on him. C.A. started attending daycare in mid-November. On November 23, C.A. attended until 4:30 p.m.; the daycare reported C.A. was fussy and did not want to sleep or eat. C.A. seemed fine when Jessica brought him home, took off his jacket, and fed him.

Around noon on November 24, Stormy picked up C.A. and heard a loud pop. Jessica left for an appointment that afternoon but was back about 4:00 p.m., when she noticed C.A. was uncomfortable. When she took off C.A.'s sweater to give him a bath, she noticed C.A.'s left arm was limp and took him to the emergency room. An x-ray revealed the child's left upper arm bone was fractured.

Jessica told the treating nurse and physician C.A.'s eighteen-month-old sibling caused the injury by grabbing C.A.'s arm. The nurse and physician "determined that a one-and-a-half-year-old breaking an almost three-month-old['s upper] arm did not seem like a feasible story" and reported the injury to the department of health and human services (DHHS). The DHHS worker and investigating officer spoke separately with Jessica and Stormy, who told a story

similar to Jessica's. Both the DHHS worker and the investigating officer were skeptical about the initial story given by the parents.[1]

Later that evening, Jessica told the officer Stormy had picked up the baby from a swing when trying to console him and heard a loud pop. The mother also told the nurse and physician Stormy picked up C.A. by one arm.[2] The officer returned to speak with Stormy, and he relayed a story where he appropriately picked up C.A. from a swing when he heard a pop and suggested C.A.'s arm must have caught on something.

Jessica had exchanged text messages with Shawn Agan, Stormy's mother, in October and November about C.A.'s bruises and the trip to the hospital. While caring for C.A. the last week of November, Shawn noticed the child was in pain and cried when she touched his ankles while changing him. C.A.'s pediatrician discussed the child's medical condition before and after the arm fracture with the investigators, stating the injury was inconsistent with the parents' explanations and opined the injury was "nonaccidental trauma." The child was referred to child-abuse specialists to check for additional injuries. Radiologists later testified scans completed on November 24 and December 11 indicated C.A. had suffered fractures to a rib, tibia, and arm. The scans identified a broken rib and a break in C.A.'s tibia near the ankle that predated the November 24 scan.[3] The doctors

---

[1] The investigating officer's body camera recorded the interviews with Jessica and Stormy.

[2] Jessica later denied telling the doctor Stormy picked up C.A. by one arm. She also told the doctor a third story where the older child jumped on C.A.

[3] Although faintly visible in the November 24 scan, the tibia fracture was first identified by the pediatric radiologist reviewing both sets of scans in December; evidence of the healing bone let the radiologist know where to look on the November 24 scan.

could not provide a timeframe when the arm fracture occurred, noting it was an acute fracture happening recently—at most a couple days—before the November 24 x-ray. However, a treating osteopathic doctor noted the type of arm fracture C.A. had would cause moderate to severe pain and would be very obvious to a caretaker.

The State charged Stormy with one count of neglect of a dependent person and three counts of child endangerment resulting in serious injury—one count for each broken bone.[4] In September 2021, a jury convicted him of neglect of a dependent person and child endangerment resulting in serious injury—fractured arm. He appeals, challenging the sufficiency of the evidence to support his convictions and asserting the court abused its discretion in granting a motion in limine excluding evidence of a subsequent injury to a child at C.A.'s daycare.

## II. Standard of Review.

> We review sufficiency-of-the-evidence claims for correction of errors at law. We will uphold the verdict if it is supported by substantial evidence. Evidence is substantial if, when viewed in the light most favorable to the State, it can convince a rational jury that the defendant is guilty beyond a reasonable doubt.

*State v. Mathias*, 936 N.W.2d 222, 226 (Iowa 2019) (internal citations and quotation marks omitted).

"'Evidentiary rulings are generally reviewed for abuse of discretion.' We reverse for an abuse of discretion if evidence was excluded based on an erroneous application of the law." *State v. Buelow*, 951 N.W.2d 879, 884 (Iowa 2020) (internal citation omitted).

---

[4] Jessica was also charged with the same four offenses as Stormy and was found guilty of the same two offenses in a joint jury trial.

**III. Analysis.**

*A. Sufficiency of the evidence.* "In considering a challenge to the sufficiency of the evidence, '[i]t is not the province of the court . . . to resolve conflicts in the evidence, to pass upon the credibility of witnesses, to determine the plausibility of explanations, or to weigh the evidence; such matters are for the jury.'" *State v. Mathis*, 971 N.W.2d 514, 519 (Iowa 2022) (alteration in original) (citation omitted).

Stormy claims the record does not support his conviction for either neglect of a dependent person[5] or child abuse resulting in injury.[6] In support, he cites his own testimony at trial explaining how he picked up C.A., a doctor's opinion that if Stormy picked up C.A. as he described it was unlikely to cause the child's injury, and the mother's actions monitoring the child's bruising with the doctor. He maintains that evidence necessitates findings that no neglect or child abuse occurred. He instead argues C.A.'s arm injury occurred while attending daycare in November.

---

[5] The jury was instructed on the elements to convict Stormy of neglect of a dependent person:

> 1. Between August 26, 2020[,] and November 24, 2020, the defendant was the parent of [C.A.].
> 2. [C.A.] was under the age of fourteen years.
> 3. The defendant knowingly or recklessly exposed [C.A.] to a hazard or danger against which [C.A.] could not reasonably be expected to protect himself.

[6] The jury instruction concerning the elements for child endangerment causing serious injury—fractured arm were:

> 1. On or about November 24, 2020 the defendant was the parent of [C.A.].
> 2. [C.A.] was under the age of fourteen years.
> 3. The defendant acted with knowledge that he or she was creating a substantial risk to [C.A.]'s physical health or safety.
> 4. The defendant's act resulted in serious injury to [C.A.], to wit: a fractured arm.

We do not try the case anew on appellate review. *See id.* Viewed in the light most favorable to the State, substantial evidence as discussed above supports the jury's verdicts, and we affirm.

*B. Motion in limine.* Three weeks before trial, the State moved in limine to prevent testimony of an infant's death at the daycare eight months after C.A.'s attendance. After reviewing the second infant's autopsy report, the court concluded the death "has little, if any, relevance to any of the issues in the cases now before the court" and any "probative value is substantially outweighed by the danger of unfair prejudice." During trial, an offer of proof was made outside the jury's presence about the incident, which failed to show the other child suffered injuries similar to C.A.'s.

"Evidence is relevant if . . . [i]t has any tendency to make a fact more or less probable than it would be without the evidence; and . . . [t]he fact is of consequence in determining the action." Iowa R. Evid. 5.401. "Whether the necessary minimum level of logical connection between the offered evidence and the fact to be proven exists is a legal question lying within the broad discretion of the trial court." *State v. Thompson*, 954 N.W.2d 402, 407 (Iowa 2021) (citation omitted).

We conclude the district court did not abuse its discretion in finding the evidence of an infant death with no injuries similar to C.A.'s that occurred eight months later was not relevant.

**AFFIRMED.**